IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TRAVELERS PERSONAL SECURITY INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>JAYME JOHNSTON ET AL.,<br><br>*Defendants.* | CIVIL NO. 6:16-CV-00011<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Plaintiff Travelers Personal Security Insurance Company ("Travelers") seeks a declaratory judgment that it is owes no duty to provide coverage Defendant Christian Riddle for claims arising from a serious accident in which Riddle was driving a friend's father's vehicle. Travelers issued a policy covering vehicles owned by Riddle's mother and stepfather ("the Johnstons"). The policy also provided coverage to relatives of the Johnstons residing in their "household," for accidents occurring while the relative was operating a vehicle with the owner's permission. Travelers alleges that, at the time of the accident, Riddle (age 20 at the time)[1] was not a resident of the Johnston household, and even if he was, he did not have proper permission to drive the vehicle in question. For purposes of this motion for summary judgment, Travelers concedes that there is a genuine issue of material fact as to whether Riddle had permission to drive the vehicle.

---

[1] *See* dkts. 1 ¶ 10 (alleging Riddle was 20) and 28 ¶ 10 (admitting the allegations contained in complaint paragraph 10).

1

The issue before the court is whether Defendants,[2] upon whom the burden of proof rests, have presented sufficient evidence to create a genuine issue of material fact and to prevent Travelers from prevailing as a matter of law on whether Riddle was a member of the Johnston household on the date of the accident. Travelers has presented declarations of the Johnstons stating the Riddle moved out of their house several months before the accident and was not otherwise connected to the household at the time of the accident. In opposition to these statements, Defendants have only offered the limited declaration of Corey Gribbin, a friend of Riddle's. Riddle himself refused to contradict the Johnstons in a declaration.[3] I hold that Defendants have not carried their burden and will grant summary judgment to Travelers.

**I.    Burden of Proof**

As the parties seeking coverage, Defendants have the burden of proving that Riddle was a resident of the Johnston household on the day of the Accident, and thus that insurance coverage existed. *Furrow v. State Farm Mut. Auto. Ins. Co.*, 237 Va. 77 (1989); *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 800 F. Supp. 2d 722, 731 (E.D. Va. 2011), *aff'd sub nom. Suntrust*

---

[2]    Travelers originally brought suit against Jayme Johnston, Cindy Johnston, Christian Riddle, N.M. (through her next of friend Tina Matthews), and the estate of Ivy Adkins. The Johnstons have not appeared in this litigation and the Clerk of the Court posted an Entry of Default for the Johnstons on August 25, 2016. (Dkt. 30). Therefore, for the purposes of this Memorandum Opinion, "Defendants" refers to the parties that are adverse to Travelers and are actually litigating this controversy, namely Christian Riddle, N.M., and the Estate of Ivy Adkins.

[3]    Upon being questioned at hearing as to why Riddle did not simply contradict the Johnstons in his own declaration, counsel replied:

> The son would not contradict his parents and told us so, because, in his mind, he said he's – he doesn't want to disrespect his mother after what he's been through and done to her to the point . . . So that's the basis for the reason that he did not want to get into specific facts; purely because he did not want to contradict his parents, his mother, in a signed document.

(Dkt. 151 at 25–26).

*Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243 (4th Cir. 2013) ("Under Virginia insurance law, the insured bears an initial burden to establish a prima facie case that coverage should be triggered."); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 706 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013) ("Under Virginia law, '[i]n an action for declaratory judgment, the burden of proof is not put on the plaintiff merely because he has filed the action. Rather, the Court must examine the underlying issues to determine who bears the burden of proof.'" (quoting *Rainwater Concrete Co. v. Cardinal Concrete Co.*, 17 Va. Cir. 325 (Va. Cir. Ct. 1989))).

## II. Statement of the Facts

### a. The Accident

On the night of October 16, 2015, Joe Kleiner, Corey Gribbin, and Christian Riddle attended a party at a friend's house. (Riddle ¶ 4, Joe ¶ 4).[4] Joe Kleiner had driven the trio to the party in a car owned by his father, Mark Kleiner. (Mark ¶ 3, Joe ¶ 3). During the party, Joe complained that there were not enough girls present. (Gribbin ¶ 4, Riddle ¶ 4). Riddle told Joe that he knew some girls he could invite to the party, and asked to borrow Joe's car.[5] (Riddle ¶¶ 4, 5). Riddle then took Joe's car and drove to pick up the girls. (Riddle ¶ 6).

---

[4] For the sake of clarity — and because the evidence on the record consists almost entirely of declarations by various involved parties — each declaration will be referred to by the name of the declarant. The declarations of these individuals are located on the docket as follows: Joe Kleiner ("Joe") at 37-1, 38-4, 39-3; Mark Kleiner ("Mark") at 37-1, 38-3, 39-4; Cindy Johnston ("Cindy") at 37-4, 38-5, 39-6; Jayme Johnston ("Jayme") at 37-5, 38-6, 39-5; Christian Riddle ("Riddle") at 38-1, 39-1; and Corey Gribbin ("Gribbin") at 38-2, 39-2.

[5] At this point, the facts presented by each side diverge. Joe claims that Riddle borrowed the car without permission. (Joe ¶ 5). He claims that Riddle had repeatedly asked to borrow the car during the party, but Joe had denied him each time. (Joe ¶ 4). Riddle, on the other hand, claims that Joe handed him the keys to his car with instructions to pick up the girls and buy Joe a pack of cigarettes. (Riddle ¶¶ 5, 6). This factual dispute is relevant only as to whether an exclusion in the Policy applies.

After picking up the girls, the car driven by Riddle became involved in an accident (the Accident") on its return trip to the party. (Riddle ¶ 7). Defendants N.M. (a minor) and Ivy Adkins were passengers in the vehicle, and Ms. Adkins died as a result of the accident.

### b. The Policy

At the time of the accident, Jayme and Cindy Johnston (Riddle's mother and stepfather) were the named insured covered by Travelers' Automobile Insurance Policy number 994682272-203-1 (the "Policy"). (Dkt. 37-3). The Policy provided coverage to any "insured," which included "you" and "any family member." (*Id*. at L-1). A "family member" was defined as "a person related to you by blood, marriage or adoption *who is a resident of your household*." (*Id*. at GP-1) (emphasis added).

The Virginia Supreme Court has interpreted the meaning of the phrase "household" in this context as follows:

> Whether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.

*State Farm Mut. Auto Ins. Co. v. Smith*, 142 S.E.2d 562, 566 (Va. 1965) *overruled on other grounds by State Farm v. Jones*, 383 S.E.2d 734 (Va. 1989). Further, "[t]he word 'household' . . . connotes a settled status; a more settled or permanent status is indicated by 'resident of the same household' than would be indicated by 'resident of the same house or apartment.'" *Id*. at 565–66.

### III. Motion for Summary Judgment[6]

---

[6] In deciding Travelers' motion for summary judgment, the Court will not consider the amended declaration of Corey Gribbin submitted by Defendants. *See infra* Part IV.

### c. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

### d. Discussion

Travelers' Policy provides coverage to an insured's "family member." which is defined in relevant part as someone who is a "resident of [the insured's] household." (Dkt. 37-3). The issue before the Court is whether Riddle was a resident of the Johnstons' household at the time of the Accident such that he would have been covered by the Policy for claims arising out of the Accident.

#### i. Genuine Issues of Material Fact

Travelers evidence in support of summary judgment primarily consists of a copy of the Policy and the declarations of the Johnstons. Cindy Johnston's declaration reads in relevant part:[7]

> 3. Christian Luke Riddle is my son. On July 4, 2015, my husband and I asked Mr. Riddle to move out of the property. He complied with that request. It is my belief that during the period between July 4, 2015 and early August 2015, Mr. Riddle spent the night at the homes of various friends and acquaintances
> 4. In early August 2015 Mr. Riddle Left Virginia to take a job in Minnesota. He remained at this job for a period of approximately four to six weeks before returning to Virginia.
> 5. Following his return to Virginia, Mr. Riddle was not permitted to move back into the property. To my knowledge, prior to the accident underlying this lawsuit Mr. Riddle was staying at a variety of places, including the homes of his girlfriend and his girlfriend's grandmother.
> 6. Following his return to Virginia from Minnesota, it is my recollection that Mr. Riddle spent the night at the Property only once — the night before a court date. He was permitted to spend the night at the Property on that occasion only because he did not have a valid driver's license and my husband planned to take him to his court date.
> 7. Mr. Riddle no longer has a bedroom at the Property.
> 8. Mr. Riddle has never provided any type of financial support to our family's household. He has never contributed to the payment of any utility bills or other household expenses.
> 9. Following his return to Virginia from Minnesota, my husband and I did not provide any type of financial support to Mr. Riddle.

Defendants have conceded several aspects of these declarations at hearing. They do not contest that Christian Riddle moved out of the Johnston residence on July 4th, or that he moved to Minnesota to work for a period shortly thereafter.[8] Instead, they argue that Riddle moved back in with the Johnstons following his stint in Minnesota.

---

[7] Jayme Johnston's declaration is substantively identical. It differs only in the perspective from which the facts are told (*e.g.* "stepson" instead of "son," "wife" instead of "husband").

[8] *See* Dkt. 151 at 28–29:

> COURT: . . . Did he go away for a period of time?
> MR. TROST: Yes, he went away for a period of time to Minnesota, but we don't know — he came back. He came back to his home. . . . He came right back to his home after he finished doing what he was doing in Minnesota.
> . . .

6

In support of their position, Defendants have submitted the following statements from Corey Gribbin asserting that Riddle lived at the Johnston residence in a downstairs bedroom, and that he had skateboarded over from the house to meet up with Gribbin before they were picked up by Joe Kleiner to go to the party:

> 7. Christian Riddle lived at his house at 1485 Cuddington Lane, Forest, Virginia in Lake Vista
> 8. Christian Riddle lived in a downstairs bedroom where he had his bed, and belongings such as clothes, skateboard, and shoes.
> 9. On October 16, 2015, Christian Riddle rode his skateboard from his house at 1485 Cuddington Lane, Forest, Virginia to my house at 1302 Twin Springs Court, Forest, Virginia before we were picked up by Joe Kleiner.
> 10. The 1485 Cuddington Lane address was Christian Riddle's residence.

Travelers has objected to this portion of Gribbin's declaration on the grounds that it is inadmissible and that it fails to establish Riddle's residency.

A close examination of the evidence reveals that no genuine issue exists because Gribbin's declaration does not contradict those of the Johnstons. Gribbin's declaration does not specify the dates on which Riddle was living in the Johnston residence. Thus, it is perfectly consistent for Gribbin to be correct that Riddle lived at the Johnston residence as some point in the past, and for the Johnstons to be correct that he did not live there after July 4, 2015. The dated assertion about skateboarding from the Johnston residence also does not conflict any portion of the Johnstons' evidence, as they made no claims regarding Riddle simply visiting the residence on skateboard. It is highly plausible that Riddle could have skateboarded over from the Johnston residence despite the fact that he had not moved back into the residence after he was asked to move out on July 4th.

---

> COURT: How long was he in Minnesota?
> MR. TROST: I believe he was in Minnesota six weeks. . . .

The other attorney representing Defendants, Burton Leigh Drewry, Jr., did not object to this characterization.

Further, the potentially conflicting portions of Gribbin's declaration cannot be considered because they do not show how Gribbin had personal knowledge of the facts he asserted. Under Federal Rule of Civil Procedure 54(c)(4):

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Here, Gribbin's declaration provides no facts to demonstrate that his statements are based on personal knowledge or that he is competent to testify about Riddle's residency. Gribbin does not state that he visited the Johnston residence, he does not describe the nature of his relationship with Riddle, and he simply does nothing to inform the Court how he is privy to information on the internal dynamics of the Johnston household. Instead, Gribbin presents conclusory statements about Riddle's residency that generally would have been known only by members of the Johnston household. At most, the Court can infer that Gribbin observed Riddle at the Johnston residence at some points, but this inference cannot support the conclusory statements that Riddle "lived" there or that it was his "residence." The declaration also does not demonstrate how Gribbin has personal knowledge of Riddle's skateboard ride, as he does not aver that he observed Riddle from the origin of the ride. Thus, the Court will not consider Gribbin's statements that are not supported by personal knowledge in resolving this summary judgment motion.

Finally, any dispute of fact between the Johnstons and Gribbin would not be material because, as discussed in more depth below, Gribbin's evidence does not affect the outcome even if all purported factual conflicts are resolved in Gribbin's favor. Gribbin's evidence simply cannot alter the conclusion in this case because it does not carry sufficient probative weight on the question of whether Riddle was a member of the Johnston *household*, rather than just

physically present at the house. *See Anderson*, 477 U.S. at 248. For these reasons, the Court concludes that no genuine issues of material fact exist.

### e. Judgment as a Matter of Law

Defendants have the burden of proving that insurance coverage existed, and thus that Riddle was a resident of the Johnston household. *See supra* Part I. This Court considered how to evaluate whether an adult child is a resident of a household in *State Farm Mut. Auto. Ins. Co. v. Bowles*, No. 6:09-CV-44, 2011 WL 3563132 (W.D. Va. Aug. 12, 2011). In that case, the Court distilled the holdings of Virginia cases on the subject into an eight-factor, nonexclusive test which includes:

> the extent to which the claimant (1) intends to be a permanent resident of the household; (2) has regular, versus erratic contacts with the household; (3) actually stays at the residence; (4) maintains a close, or strained relationship with other members of the household; (5) pays rent, board, or otherwise contributes to household expenses or maintenance; (6) keeps personal property at the residence; (7) receives substantial mail at the residence; and (8) maintains a room or other private space in the residence.

*Bowles*, 2011 WL 3563132 at *2.

Two analogous cases interpreting Virginia law are also instructive here. *See Allstate Ins. Co. v. Patterson*, 231 Va. 358 (1986); *Auto. Ins. Co. of Hartford, CT v. Argenbright*, No. 5:09CV00088, 2010 WL 2465138 (W.D. Va. June 17, 2010). The gravamen of these two cases is that simply residing in a house intermittently is insufficient to establish residency in a household. Instead, there must be some more regular contact as well as an *intent* to be a member of the social unit that comprises the household. *See Patterson*, 231 Va. at 363 ("[T]he intention must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household; casual, erratic contacts are not sufficient."); *Argenbright*, 2010 WL 2465138 at *3.

Under these standards, Defendants have not put forth sufficient evidence establishing that coverage existed. Excluding Gribbin's inadmissible statements, the only evidence in support of Riddle's residency in the Johnston household comes from the facts that his driver's license listed the Johnston residence as his address and that he stayed at the residence for a single night before a court date. Riddle's driver's license carries little probative weight, as it is exceedingly common for 20-year-olds such as Riddle to have a driver's license that was issued several years prior. Unless it was issued between the July 4th and the time of the Accident — a fact not in the record — the license does very little to establish Riddle's residency at the time of the Accident. Similarly, the fact that Riddle stayed at the Johnston residence for a single night provides little insight, as being part of a "household" consists of far more than occasionally sleeping in a shared physical space. *See Smith*, 142 S.E.2d at 566. Defendants' meager evidence is countered by the uncontested declarations of the Johnstons stating that Riddle was forced to move out in July and did not reestablish his connections with the household subsequently. No reasonable factfinder would hold that this evidence is sufficient to carry Defendants' burden of establishing that Riddle was a resident of the Johnston household at the time of the Accident.

Even considering the inadmissible aspects of Gribbin declaration, Defendants have still failed to carry their burden. The lack of dates in the Gribbin declaration is fatal. It is completely unremarkable that Riddle "lived" in the Johnston residence or considered it his "residence" at some point, as Travelers agrees that he lived there prior to July 4th. (*See* Gribbin ¶¶ 7, 8, 10; dkt. 37 at 2). Gribbin's statement, then, cannot establish that Riddle was a resident of the household *at the time of the Accident*, which is the legally relevant question here.

Further, even the most generous interpretation of the Gribbin declaration — inferring that he specified all relevant dates — would not allow Defendants to meet the legal standard for

10

establishing residency in a household. Most importantly, the evidence shows that Riddle was asked to move out of the Johnston residence and actually did so months before the Accident. Asking Riddle to move out of a house was not an insignificant act. It is not the type of request one would make of someone they wanted to remain a resident of their household. It served both to sever any physical connection with the Johnston residence and to evince an intent by all parties not to have Riddle connected to the household. *See Patterson*, 231 Va. at 363 ("We agree with Patterson's administrator that a person's intent is important in determining whether he qualifies as a resident of a particular household.); *see id*. ("[T]he intention must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household; casual, erratic contacts are not sufficient.").

After that significant severing event, there is no evidence that Riddle maintained anything other than sporadic and insignificant contact with the Johnston household. Nor is there evidence that Riddle or the Johnstons intended for Riddle to be a resident of the Johnston household. Gribbin's statements can establish only that Riddle was present at the Johnston residence at certain, unspecified times observed by Gribbin. They do not show that Riddle: interacted with the Johnstons while he was were there, intended to stay there, regularly slept there, had financial contacts with the household, or otherwise participated in activities that would make him part of a *household* rather than just an occasional occupier of a physical space. *See Smith*, 142 S.E.2d at 566. Thus, the evidence indicates that the Riddle moving out and leaving the Johnston household remained the status quo at the time of the Accident.

This conclusion is supported by an analysis under the *Bowles* factors. Gribbins evidence — considering inadmissible aspects and inferring the time periods to which it applied — is still only sufficient to put three of the *Bowles* factors in dispute: factors (3), (6), and (8). Four of the

11

five remaining factors all must go in Travelers' favor.[9] The Johnston declarations establish that Riddle had only periodic contacts with the household, and Gribbin the declaration does nothing to combat that notion. The fact that Riddle was asked to leave and actually did so is inconsistent with the intent to live at the Johnston residence permanently. That same fact demonstrates that there was a strained relationship. Further, it is uncontested that Riddle did not pay rent or have other financial connections with the household. These factors buttress the conclusion that there simply is not evidence of an intent for Riddle to be part of the Johnston household at the time of the accident. Considering its inadmissible aspects, Gribbin's declaration still fails to successfully counter Travelers' highly probative evidence of Riddle moving out, and thus fails establish that Riddle was a resident of the Johnston household at the time of the accident.

Travelers is entitled to summary judgment as to Riddle's residency.

IV. **Motion to Amend Declaration of Corey Gribbin**

Attached to their opposition briefs, Defendants submitted the declaration of Corey Gribbin wherein Gribbin stated that Riddle was living in the Johnston residence. In its reply brief, Travelers pointed out several deficiencies with the Gribbin declaration, namely that it did not establish the factual basis of Gribbin's statements and did not specify the dates in which he believed Riddle was living in the Johnston residence. Several days after Travelers filed its reply brief, Defendants attempted to correct the deficiencies identified by Plaintiff by moving to include an amended declaration of Corey Gribbin, the relevant portions of which read as follows:

> 1. My name is Corey Gribbin, I am over eighteen years of age, and I currently live at 1302 Twin Springs Court, Forest, Virginia, Bedford County, Virginia. **I have been friends with Christian Riddle since approximately the seventh grade when I was approximately twelve or thirteen years old. I have**

---

[9] As to the seventh *Bowles* factor, there is no evidence regarding Riddle receiving mail at the household, although the fact that his driver's license lists the Johnston residence as his address suggests that he likely received some mail there.

12

> **lived near him at his 1485 Cuddington Lane address for approximately ten years. I have visited him numerous time as his 1485 Cuddington Lane residence over the years and in the weeks and days prior to October 16, 2015.**
> . . .
> 7. Christian Riddle lived at his house at 1485 Cuddington Lane, Forest, Virginia in Lake Vista **on October 16 and 17, 2015**.
> 8. Christian Riddle lived in a downstairs bedroom where he had his bed, and belongings such as clothes, skateboard, and shoes **on October 16 and 17, 2015.**
> . . .
> 10. The 1485 Cuddington Lane address was Christian Riddle's residence on **October 16 and 17, 2015.**

(Dkt. 41-1 (alterations from the original declaration bolded)). The Court will deny Defendants' motion to amend because Defendants have not demonstrated good cause to allow the amended declaration at this stage of the litigation.

### f. Standard of Review

Defendants have filed the motion pursuant to Federal Rule of Civil Procedure 15, which relates to the amendment of pleadings. (*See* dkt. 41 at 1). However, the "pleadings" to which Rule 15 applies are defined in Rule 7 as:

> (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7(a). Notably, a declaration is not one of the listed pleadings, and it does not appear that Rule 15 governs the motion.

Some analogous cases have addressed similar motions brought under Rule 56(e), which permits the Court to "give an opportunity to properly support or address" a fact when a party has failed to do so initially.[10] *See Leighton v. Gonzales*, No. CV.A.05-1835 HHK/JMF, 2006 WL

---

[10] Rule 56(e) reads:

2583044, at *2 (D.D.C. Sept. 7, 2006); *Lamoureux v. AnazaoHealth Corp.*, No. 3:03CV01382 WIG, 2010 WL 3801611, at *1 (D. Conn. Sept. 22, 2010). Others have evaluated amended and additional declarations filed after the briefing period under the "excusable neglect" standard of Rule 6(b), which addresses late filed affidavits. *See Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co.*, No. CIV.A. 3:11-0009, 2011 WL 5040374, at *2 (S.D. W. Va. Oct. 24, 2011); *In re Rodriguez*, 421 B.R. 356, 363–64 (Bankr. S.D. Tex. 2009). Finally, some cases simply do not address the legal authority for the motion, either in the motion itself or in the court's opinion. *See Chandler v. Volunteers of Am., Se., Inc.*, 126 F. Supp. 3d 1216, 1219 (N.D. Ala. 2015); *Slice v. ChoiceDATA Consumer Servs., Inc.*, No. 3:04-CV-428, 2006 WL 686886, at *4 (E.D. Tenn. Mar. 16, 2006) ("Although it is unclear why the proffered reasons justify the relief requested, the Court will nevertheless GRANT plaintiff's motion . . . ."). The Court finds that Federal Rule of Civil Procedure 7(b) applies to this situation as it covers the form of motions generally, and provides the guidance that the movant must "state with particularity the grounds for seeking the order." Under this standard, the Court will consider whether the grounds presented by Defendants justify the relief that they seek in this instance.

### g. Discussion

Several factors lead the Court to conclude that Defendants' motion to amend should not be granted. Most importantly, Defendants have not shown good cause for permitting their

---

**Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
    **(1)** give an opportunity to properly support or address the fact;
    **(2)** consider the fact undisputed for purposes of the motion;
    **(3)** grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
    **(4)** issue any other appropriate order.

amendment. The only reason given for providing the amended declaration now — after briefing has concluded and they have received the benefit of seeing Travelers' response to their evidence — is that the new material was "inadvertently omitted" at the opposition briefing stage. (Dkt. 41 at 2).

Defendants' mistake, however, does not provide sufficient justification for allowing amendment. Defendants had all the access to Gribbin's statements that they needed at the time they filed their opposition to Travelers' motion for summary judgment. In accordance with the Court's Pretrial Order and Local Rule 11(c), they were given ample notice of the briefing schedule and the necessity of filing an effective opposition to summary judgment by the appropriate date. The sole reason for amendment now is that they have realized the inadequacy of their opposition to summary judgment after reading Travelers' reply brief. Mere mistake is an insufficient ground on which to allow Defendants to submit new evidence outside of the appointed briefing period. *See Leighton*, 2006 WL 2583044, at *3 ("Given the significance of a motion for summary judgment and the magnitude of the consequences of failing to adequately oppose such a motion, it seems to me that plaintiff and his counsel should have put a little more care into plaintiff's opposition."); *Chandler*, 126 F. Supp 3d at 1219 n.1 ("The court **DENIES** the motion as untimely because Chandler is attempting to refile evidentiary submissions well after her response deadline and with the benefit of having seen Defendants' reply." (emphasis in original)).

Further, Travelers would be prejudiced by granting amendment here. Travelers devoted no small part of its reply brief to arguing that the Gribbin declaration, as written, was insufficient to prevent summary judgment. (*See* dkt. 40 at 2, 11–15). Should the Court permit the amended declaration, Travelers would need to file a revised reply brief addressing the new contentions

15

brought up in Gribbin's amended declaration. *See Leighton*, 2006 WL 2583044, at *2 ("Plaintiff also fails to address the prejudice to defendant, who has devoted time and energy to drafting a reply brief, which, if plaintiff is allowed to supplement his opposition at this late date, he will have to do all over again."). For instance, Travelers may now wish to argue that the amended declaration asserting where Riddle lived for two days is insufficient to establish residency in a household — an argument not available to them based on Defendants' original oppositions.

Contrary to Defendants' assertions, then, this is not merely an attempt to "clarify the substance" of the Gribbin declaration, but instead is an effort to add new substance to the declaration to counter the legal arguments in Travelers' reply brief. (Dkt. 41 at 1). Thus, this circumstance is unlike others where the lack of substantive amendment led the court to conclude there was a lack of prejudice to the opposing party. *See, e.g. Adams v. Sears Roebuck & Co.*, No. 2:13-CV-55-BCW, 2014 WL 670630, at *1 (D. Utah Feb. 20, 2014) (finding it relevant that "[n]o new issues or facts were raised in the Amended Declaration"); *Lewis v. Bay Indus., Inc.*, 51 F. Supp. 3d 846, 852–53 (E.D. Wis. 2014) (finding no prejudice where the "initial and supplemental declarations are identical in substance"); *Foster v. Enenmoh*, No. 1:08-CV-01849-LJO, 2013 WL 3991978, at *3 (E.D. Cal. Aug. 1, 2013), *report and recommendation adopted*, No. 1:08-CV-01849-LJO, 2013 WL 5423622 (E.D. Cal. Sept. 26, 2013) ("Because the changes are not substantive, there is no prejudice to Plaintiff in allowing the amended declarations and the Court recommends the motion be granted.").

Finally, even if the Court were to allow the amended declaration, it would not change the outcome on the merits. The amended declaration still largely contains inadmissible material. For instance, it still does not establish how Gribbin had personal knowledge of the origin of Riddle's skateboard ride. (*See* dkt. 41-1 ¶ 8). Similarly, while Gribbin asserts that Riddle was living in a

16

downstairs bedroom in the Johnston residence on October 16 and 17, he does not assert that he visited the house on those days to personally observe Riddle living there, and instead only claims that he visited Riddle there "over the years and in the weeks and days prior to October 16, 2015." (Dkt. 41-1, ¶¶ 1, 7, 8, 10). The only relevant contention on which Gribbin has demonstrated personal knowledge is the assertion that he visited Riddle at the Johnston residence occasionally in the period leading up to the Accident.

Additionally, the amended declaration would not alter the Court's analysis even if it were admissible and a product of personal knowledge. The evidence in the amended declaration demonstrates only that Riddle was living in the Johnston residence on two particular days, and that Gribbin had visited Riddle at the house in the weeks and days leading up to the Accident. This evidence establishes only that Riddle had sporadic contacts with the Johnston residence. It does not show that he intended to live there or that he had regular contact with the Household, and it does not contradict the basic thrust of Travelers' evidence — that Riddle was asked to moved out on July 4th and did not ever reestablish his residency afterwards. Under the analysis in this case on the merits, the standards set out in this Court's previous decision in *Bowles*, and other relevant case law, simply establishing that Riddle was present in the house on the day of the Accident is insufficient to show that Riddle was a resident of the Johnston household for insurance purposes. Considering that Defendants have the burden of showing that insurance coverage applies and that Riddle was a resident of the Johnston household, the evidence contained in the amended Gribbin declaration would be insufficient to prevent Travelers from prevailing on summary judgment.

For these reasons, Defendant's motion to amend will be denied.

V. **Conclusion**

Travelers' motion for summary judgment will be granted. The evidence does not establish that Riddle was a member of the Johnstons' household. Therefore, he was not covered by Travelers' Policy. As a result, Travelers is entitled to declaratory judgment that it owes no duty to provide any insurance coverage under the Policy to Riddle with respect to any claims against him arising from the Accident. An appropriate Order will issue.

Entered this  11th   day of April, 2017

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE